UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------
In re

        BARBARA SHEPPARD                          09-11017 B

                          Debtor                      DECISION & ORDER
-----------------------------------------------------
MARK WALLACH, AS CHAPTER 7 TRUSTEE OF
THE ESTATE OF BARBARA SHEPPARD,

                          Plaintiff

        v.                                          AP No. 10-01087 B

COUNTRYWIDE HOME LOANS, INC.,

                          Defendant
-----------------------------------------------------

                          Penney, Maier & Wallach
                          Mark S. Wallach, Esq., of counsel
                          169 Delaware Avenue
                          Buffalo, New York 14202
`                        Attorney for the Plaintiff/Trustee

                          Bruce S. Zeftel, Esq.
                          69 Delaware Avenue, Suite 1010
                          Buffalo, New York 14202
                          Attorney for the Defendant

Bucki, Chief U.S.B.J., W.D.N.Y.

       After receiving a duly executed mortgage on the debtor's real property, the defendant recorded by mistake an unsigned copy of that same instrument. In this Chapter 7 proceeding, the trustee now seeks to avoid that mortgage. A resolution of this dispute requires that we consider the validity of the mortgage under the New York Real Property Law, as well as how the filing of a lis pendens might impact its enforceability.

       Pursuant to a deed that was duly recorded on June 1, 2007, Barbara A. Sheppard became the owner of real property commonly known as 4088 North Freeman Road in the Town of Orchard Park, New York. Contemporaneously with her acquisition of title, Sheppard borrowed $157,753 from Countrywide Home Loans, Inc. ("Countrywide"), and gave to Countrywide her note for the amount of the loan. She also agreed that as collateral for her

obligation, she would give a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"). At the closing, however, Countrywide's agent presented to Sheppard at least two copies of the mortgage. Sheppard initialed every page of these two copies, but affixed her signature to only one of the copies. Nonetheless, a notary purported to witness the execution of both copies and accordingly signed attestations that Sheppard had subscribed each of the respective documents. For reasons inexplicable, the mortgagee's agent then delivered the unsigned copy to the office of the Erie County Clerk. Upon receipt of the required tax and recording fee, a deputy clerk accepted for recording the document without signature. Meanwhile, Countrywide retained the copy that had been fully signed and notarized.

As of June 1, 2008, Barbara Sheppard defaulted on her promise to make monthly payments of principal and interest under the terms of the note. Apparently during the process of preparing a foreclosure complaint, Countrywide discovered that the county clerk had accepted for recording an unsigned copy of the executed instrument. Consequently, Countrywide started an action in state court both to correct the recording error and to foreclose. Additionally, in connection with that action, the mortgagee filed a Notice of Pendency on January 13, 2009.

Before Countrywide could complete its foreclosure, Sheppard filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 18, 2009. Then on April 7, Countrywide filed a motion for relief from the automatic stay to allow the continuance of its foreclosure. The motion, however, made no reference to any defect in the recording of the mortgage. Instead, the moving papers included a photocopy of the unrecorded version of the mortgage with Sheppard's signature. With no opposition from either the debtor or trustee, this court granted Countrywide's request for stay relief by order dated April 20, 2009.

After examining the debtor at a first meeting of creditors, the Chapter 7 trustee submitted a report of no distribution. Consequently, this case was closed on July 16, 2009. Upon learning thereafter about a potential defect in the Countrywide mortgage, the trustee moved to reopen the case on June 16, 2010. The court granted that application on June 22, and

on September 10, 2010, the trustee commenced the present adversary proceeding to avoid the mortgage pursuant to 11 U.S.C. §544(a)(3).

Section 544(a) of the Bankruptcy Code states in relevant part as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Asserting the rights of a bona fide purchaser, the trustee contends that any such hypothetical buyer of the debtor's real property would hold priority over the interest of Countrywide, and that the trustee may therefore avoid the mortgage in its entirety. Countrywide responds initially that the trustee's complaint is untimely, in that it was filed after the initial closing of the case. The mortgagee further asserts that despite any inadequacy, the recorded instrument sufficed to provide constructive notice of the mortgage. In Countrywide's view, this constructive notice would have precluded any buyer from enjoying the status of a bona fide purchaser. Alternatively, Countrywide argues that the Notice of Pendency operates to deny the status of a bona fide purchaser to any subsequently appointed trustee.

Timeliness of Adversary Proceeding

Section 546 of the Bankruptcy Code establishes limitations on the avoiding powers of a trustee. In particular, subdivision (a) of this section speaks to the issue of timeliness. As applied in the present context, section 546(a) essentially provides that a trustee may not commence an avoidance action under section 544 after the earlier of either two years after the entry of an order for relief or the time that the case is closed. Here, the trustee commenced the present adversary proceeding on September 10, 2010, a date less than two years after the start of bankruptcy proceedings but subsequent to an initial closing of this

reopened case. Under certain circumstances, this prior closing of the case might have precluded any avoidance action. In the present instance, however, Countrywide had previously moved for relief from the automatic stay of 11 U.S.C. §362. That motion made no reference to the recording defect or to the fact that Countrywide's pre-petition complaint had sought both to foreclose and to correct the error. As an exhibit to its motion, Countrywide attached a copy not of the unsigned mortgage of record, but of an unrecorded mortgage with the debtor's full signature. By reason of this selective presentation, Countrywide effectively camouflaged a serious title problem. If the motion had alerted the trustee to that problem, then presumably the trustee would not have allowed the case to close. Accordingly, principles of equitable estoppel will preclude Countrywide from asserting the bar of the earlier closing of this case.

Trustee's Status as Bona Fide Purchaser

Pursuant to 11 U.S.C. §544(a)(3), a trustee enjoys the rights and powers of a bona fide purchaser who acquires real property from the debtor at the time of the commencement of a bankruptcy case. Consequently, the trustee may avoid any mortgage that a bona fide purchaser could avoid. To prevail in the present instance, the trustee must show that the New York recording statute would allow a bona fide purchaser to take priority over the Countrywide mortgage. However, even if a bona fide purchaser would otherwise prevail, the trustee must further demonstrate that Countrywide could retain this status despite the filing of a lis pendens.

Article 9 of the New York Real Property Law deals with the recording of instruments that affect real property. Section 290 of this article defines "conveyance" to include "every written instrument, by which any estate or interest in real property is created, transferred, mortgaged or assigned . . . ." Thus, for purposes of the statute, the mortgage that Sheppard gave to MERS would constitute a conveyance. Section 291 of the Real Property Law then establishes the effect of a recording of conveyances. It provides in relevant part as follows:

> "A conveyance of real property, within the state, *on being duly acknowledged by the person executing the same,* or proved as required by this chap-

> ter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. *Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires* by exchange or contracts to purchase or acquire by exchange, *the same real property or any portion thereof . . . in good faith and for a valuable consideration*, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded . . . ."

N. Y. REAL PROP. L. § 291 (McKinney 2006) (emphasis added). In the present instance, the agent for Countrywide submitted for recording an instrument that Sheppard did not execute. As an unexecuted document, the submitted copy could not satisfy the requirement, as stated in the first sentence of Real Property Law §291, that the instrument be "duly acknowledged by the person executing the same." Pursuant to the second sentence of section 291, because the mortgage was not recorded in conformity with the first sentence of the section, that mortgage "is void as against any person who subsequently purchases or acquires . . . the same real property . . . in good faith and for a valuable consideration."

Countrywide argues that Sheppard initialed every page of the recorded instrument and that these initials should serve as a suitable substitute for the debtor's signature. Although a marking of any type might constitute a signature under particular circumstances, the evidence here reveals the purported recording of an instrument that was never executed. Countrywide utilized a form of mortgage that clearly reserved a place for the debtor's signature. Indeed, the debtor's name was typed immediately below the signature line. Immediately above that line, the instrument stated: "By signing below, Borrower accepts and agrees to the terms contained in this Security Instrument and in any riders executed by Borrower and recorded with it." Unquestionably, therefore, the document directed Sheppard to sign in a designated place. Sheppard understood this direction, as evidenced by her signature on the unrecorded copy of

Case 1-10-01087-CLB    Doc 30    Filed 05/24/12    Entered 06/12/12 14:24:44    Desc Main
                        Document      Page 5 of 8

the mortgage. Despite the absence of any basis for confusion, the signature line is totally blank on

the copy that Countrywide submitted for recording. It is, therefore, an unexecuted copy that does not accrue the benefits of recording under the New York Real Property Law.

Without more, the mortgage given to MERS would have been void as against a bona fide purchaser of the property. In the present instance, however, foreclosure proceedings were commenced prior to Sheppard's bankruptcy filing, and in connection with those proceedings, Countrywide filed a notice of pendency or lis pendens on January 13, 2009.

Article 65 of the New York Civil Practice Law and Rules (C.P.L.R.) defines the purpose and effect of a notice of pendency. A notice of pendency is a provisional remedy that "may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y. C.P.L.R. §6501 (McKinney Supp. 2012). Although a defect in the recording of a mortgage might impair rights of the mortgagee against anyone who might already have acquired an interest in property prior to the start of foreclosure, any such defect would not limit the rights that a mortgagee could assert against the mortgagor. 77 N. Y. JUR. 2D *Mortgages* §125 (2003). A notice of pendency then operates to expand the anticipated remedy to include relief against anyone who might acquire a property interest from a named defendant at any time subsequent to commencement of the action. Thus, C.P.L.R. 6501 declares this outcome:

> The pendency of such an action is constructive notice, from the time of filing of the notice [of pendency] only, to a purchaser from, or incumbrancer against any defendant . . . against whose name a notice of pendency is indexed. A person whose conveyance or incumbrance is recorded after the filing of the notice [of pendency] is bound by all proceedings taken in the action after such filing to the same extent as a party.

Case 1-10-01087-CLB    Doc 30    Filed 05/24/12    Entered 06/12/12 14:24:44    Desc Main
                        Document      Page 6 of 8

Countrywide named Barbara Sheppard as a defendant in the foreclosure complaint and in the notice of pendency. Under New York law, by reason of the notice of pendency, all subsequent purchasers of a property interest from Barbara Sheppard are deemed to have received constructive notice of Countrywide's action. Notably, that action sought not only to foreclosure a mortgage, but also to replace the recorded instrument with the properly executed instrument that Countrywide had intended to record. The commencement of the state court action operated to notify all named defendants about Countrywide's lien. Then in addition, the notice of pendency operated to provide notice to anyone who might acquire a property interest from any named defendant. Here, the bankruptcy trustee stands as a party who would have acquired his interest from the debtor. When Barbara Sheppard filed a petition for relief in bankruptcy, the pre-existing notice of pendency precluded the trustee from acquiring the status of a bona fide purchaser. Accordingly, the trustee fails to establish his right under 11 U.S.C. §544 to avoid the mortgage of Countrywide.

In *Mortgage Lenders Network, USA v Sensenich (In re Potter)*, 313 F3d 93 (2nd Cir. 2002), the Court of Appeals questioned whether Vermont's doctrine of lis pendens operated to give notice of the existence of an improperly witnessed mortgage and thereby to make that mortgage valid and binding on subsequent purchasers. The court then certified the issue to the Vermont Supreme Court, which ultimately resolved the dispute on other grounds. 177 Vt. 592 (2004). In any event, the circumstances of the instant case do not present the same issues that the Court of Appeals found troubling. In *Mortgage Lenders Network*, the trial court had concluded that an improperly witnessed or acknowledged mortgage was invalid under Vermont law. Thus, the concern became whether the lis pendens could somehow rehabilitate an otherwise null lien. In contrast, Countrywide here possesses a fully executed and properly acknowledged mortgage that Countrywide could enforce as against Sheppard herself. The bankruptcy trustee questions not the validity of Countrywide's mortgage, but only its priority as against a trustee having the rights of a bona fide purchaser under 11 U.S.C. §544(a)(3). Solely with regard to the matter of notice, New York law provides that Countrywide's lis pendens will

bind all subsequent purchasers to the outcome of its pre-petition action. In like fashion, the lis pendens precludes the trustee from enjoying the rights that would otherwise accrue from his status as a bona fide purchaser.

For the reasons stated herein, the court will grant the motion of Countrywide Home Loans, Inc., for summary judgment, and will deny the cross motion of the trustee. Accordingly, the trustee's complaint is hereby dismissed.

So ordered.

Dated: Buffalo, New York    /s/ CARL L. BUCKI
        May 24, 2012        Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.